**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **METROPOLITAN LIFE INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 15-2467-STA-dkv** |
| **MARY McGHEE, JAYSON JONES, and JENNIFER JONES,** | ) ) ) ) | |
| **Defendants.** | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**ORDER GIVING NOTICE OF SUMMARY JUDGMENT *SUA SPONTE***

Before the Court is Defendant Mary McGhee's Motion for Summary Judgment (ECF No. 24) filed on December 16, 2015, as amended (ECF Nos. 28, 29) on December 22, 2015. Defendants Jayson Jones and Jennifer Jones ("the Jones Defendants") have responded in opposition to McGhee's Motion, questioning the validity of the beneficiary designation form showing Mary McGhee as the beneficiary of their deceased grandmother's life insurance policy. McGhee had the opportunity to file a reply brief to address the Jones Defendants' response but elected not do so. The Court held a hearing on McGhee's Motion on April 22, 2016, and received additional evidentiary submissions from the Jones Defendants. For the reasons set forth below, McGhee's Motion for Summary Judgment is **DENIED**. Furthermore, the Court herein gives Mary McGhee notice of the fact that the Court is considering granting summary judgment *sua sponte* in favor of the Jones Defendants.

## BACKGROUND

On July 14, 2015, Plaintiff Metropolitan Life Insurance Company ("MetLife") filed a Complaint in Interpleader (ECF No. 1). According to the Complaint, MetLife is the claim fiduciary for the AT&T Group Life Insurance Program ("the plan") and has responsibility for the administration of claims in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. (Compl. ¶¶ 7, 8.) Bernadine J. McGhee, deceased, was an employee of AT&T and a participant in the plan. (*Id.* ¶ 7.) At the time of her death, Ms McGhee was enrolled under the plan for basic life insurance in the amount of $14,500.00, a benefit that became payable upon Ms. McGhee's death on November 29, 2014. (*Id.* ¶¶ 13, 14.)

ERISA, 29 U.S.C. § 1002(8), defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." (*Id.* ¶ 9.) The plan grants a participant the right to name his or her beneficiary and change the beneficiary at any time. (*Id.* ¶ 10.) According to MetLife's Complaint, the most recent beneficiary designation form on file for the deceased was dated January 20, 2013, and nominated Mary McGhee as the sole primary beneficiary of the life insurances proceeds at issue. (*Id.* ¶ 11.) The beneficiary designation form in effect prior to that date was dated December 27, 2006, and named the Jones Defendants as the co-primary beneficiaries in equal shares. (*Id.* ¶ 12.)

On December 3, 2014, MetLife received a letter from Jennifer Jones in which she claimed that Mary McGhee was suspected of committing fraud and identity theft against the decedent. (*Id.* ¶ 15.) Jones included with her letter to MetLife a copy of a police report from the Collierville Police Department. (*Id.*) On December 24, 2014, McGhee completed a life insurance claim for the benefits. (*Id.* ¶ 16.) On January 21, 2015, MetLife wrote to McGhee and

the Jones Defendants and explained that their adverse claims to the benefits raised questions of fact and law that MetLife could not resolve without exposing the plan to risk of double liability. (*Id.* ¶ 17.) MetLife subsequently received two letters from Jennifer Jones, reporting that the claimants to the benefits could not reach an agreement. (*Id.* ¶¶ 18, 19.) MetLife's Complaint alleged that it could not determine whether a court would find that the 2013 beneficiary designation was valid or who the proper beneficiary of the benefits was without the risk of legal exposure. (*Id.* ¶¶ 20, 23.) MetLife sought leave to interplead the funds with the Court, pending a determination of the rightful beneficiary. (*Id.* ¶ 24.)

On July 27, 2015, Plaintiff filed proof of service showing that Plaintiff had served all three Defendants named in the Complaint, Mary McGhee, Jayson Jones, and Jennifer Jones. On August 4, 2015, Defendant Mary McGhee filed an Answer (ECF No. 12) to the Complaint. On September 2, 2015, MetLife filed a motion to deposit the insurance funds with the Court and be dismissed from the case (ECF No. 15). On September 25, 2015, the Court held a scheduling conference with counsel for MetLife and counsel for Mary McGhee. Defendants Jayson Jones and Jennifer Jones did not appear at the conference. When MetLife took no further action to prosecute the case, the Court entered an order on November 20, 2015, directing MetLife to file a status report and show what MetLife intended to do to advance its claims against Defendants Jayson Jones and Jennifer Jones. MetLife filed its report on December 17, 2015, and requested that the Court grants its motion to deposit funds and for dismissal. The Court granted MetLife's motion to deposit the funds and for dismissal on March 18, 2016, and MetLife filed notice of its deposit with the Clerk of Court (ECF No. 39) on March 30, 2016.

On December 16, 2015, Mary McGhee filed the Motion for Summary Judgment now before the Court.[1] McGhee seeks judgment as a matter of law on her claim to $14,500 in basic life insurance proceeds insuring Bernadine McGhee. For support Mary McGhee cites a designation of beneficiary form showing her listed as the decedent's beneficiary on the policy. When the Jones Defendants did not respond within the time allowed under the Local Rules of Court, the Court entered an order on February 2, 2016, directing the Jones Defendants to respond to McGhee's Rule 56 Motion. The Court cautioned the Jones Defendants that failure to respond would result in the Court deciding Defendant Mary McGhee's Motion for Summary Judgment, as amended, without Defendants being heard on the Motion. Jennifer Jones filed a response in opposition (ECF No. 33) to McGhee's Motion for Summary Judgment on February 16, 2016, and Jayson Jones filed a separate response (ECF No. 34) the following day.

In opposition to McGhee's claim, the Jones Defendants question the validity of the beneficiary designation form showing McGhee as the deceased's beneficiary. The Jones Defendants essentially argue that their kinship to the deceased is closer than McGhee's. The deceased was the Jones Defendants' maternal grandmother, their mother being Bernadine McGhee's only child. Mary McGhee is the wife of the deceased's nephew. And the Jones Defendants argue that their grandmother made the complaint to the police that McGhee had cashed a check in the amount of $2,600.00 on the deceased's account without her consent or permission. Both Jones Defendants state that they only discovered Mary McGhee was the designated beneficiary after their grandmother's death. According to the Jones Defendants, McGhee did not contribute to the costs of Bernadine McGhee's funeral expenses. Jayson Jones

---

[1] McGhee re-filed what appears to be an identical motion (ECF Nos. 28, 29) on December 22, 2015.

attached a copy of the memorial prepared for Bernadine McGhee's funeral service on December 16, 2014, and explained that the family delayed the service for two weeks due to the surprise discovery about his grandmother's life insurance proceeds and the absence of the proceeds to help with the expense of the service. The Jones Defendants request then that the Court deny McGhee's Motion for Summary Judgment.

Present at the April 22, 2016 motion hearing were Mary McGhee, represented by counsel, and Jennifer Jones and Jayson Jones, both acting *pro se*. Counsel for McGhee addressed the Court first, requesting judgment as a matter of law based on the duly executed designation of beneficiary form naming Mary McGhee as the beneficiary of Bernadine McGhee's life insurance policy. Counsel also addressed the fact that neither of the Jones Defendants have filed a formal answer to the Complaint in Interpleader. The Court next heard from the Jones Defendants. Jennifer Jones addressed the Court on behalf of herself and her brother. Jones first described the police report showing a criminal complaint by her grandmother against McGhee for identity theft and fraud. Jones also claimed that she had power of attorney over her grandmother's affairs at the time of her grandmother's death. Jones adduced a document purporting to show that her grandmother revoked any prior power of attorney granted to McGhee and granted Jones power of attorney. The document bore a date of August 28, 2014, and was made exhibit 1 to the hearing for identification purposes only. Jones asserted that she submitted a copy of the document to MetLife.

At this point in the hearing, the Court directed that Jones be placed under oath to testify as to the preparation of the document. Jones was sworn in and stated that her grandmother was a resident in a nursing home at the time she executed the document. Jones prepared the document using a form for the revocation of power of attorney and obtained assistance with document from

5

an employee of the nursing home. The document purports to be notarized and witnessed. Jones explained that the document was prepared and executed to protect her grandmother's bank account from Mary McGhee. At that time, Bernadine McGhee had entered into the nursing home for rehabilitation following a hospitalization in June 2014. Jones testified that her grandmother had resided with her prior to the hospitalization in 2014 and for much of 2013. Before living with Jones, Bernadine McGhee had lived with her nephew and Mary McGhee for approximately one and a half years. When asked on cross-examination what she believed the revocation of power of attorney established, Jones testified that the document showed that she was her grandmother's closest family and caretaker. Jones went on to testify that she had no personal knowledge about the disposition of the criminal charges against Mary McGhee contained in the Collierville Police Department report.

Counsel for McGhee argued that the Court should give effect to the beneficiary designation form in place at the time of Bernadine McGhee's death and find that Mary McGhee is the rightful beneficiary of the proceeds. There is no evidence that the beneficiary designation was the product of anything other than Bernadine McGhee's free and voluntary choice. The deceased could have altered the designation at any time prior to her death but elected not to do so. Under the circumstances, the Court should grant McGhee's Motion for Summary Judgment and award her the full proceeds of the life insurance policy. Jones argued to the Court that the evidence calls McGhee's character into question and should preclude her from receiving the benefits. Jones emphasized that she and her brother only discovered that McGhee was their grandmother's designated beneficiary after her death and during the planning of her funeral service.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide."[3] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[4] and the "judge may not make credibility determinations or weigh the evidence."[5] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his]

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

asserted causes of action."[9]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[10] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]

## ANALYSIS

### I. Motion to Strike

As a preliminary matter, Mary McGhee filed a Motion to Strike (ECF No. 37) on March 18, 2016. McGhee argues that the Court should strike the responses in opposition filed by the Jones Defendants because the Jones Defendants have never filed a formal answer to the Complaint in Interpleader. McGhee argues that even if the Court treats the papers filed by the Jones Defendants in response to the Rule 56 Motion as their Answers, the Jones Defendants filed them far outside of the 21-day time limit for filing a responsive pleading under Rule 12(a). Therefore, the Court should strike the responses from the record. The Jones Defendants have not responded to McGhee's Motion to Strike, and the time to respond under Local Rule 7.2 has expired.

---

[9] *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Anderson*, 477 U.S. at 251–52.

[11] *Celotex*, 477 U.S. at 322.

The Court finds that McGhee's Motion to Strike is not well-taken. Procedurally, Rule 12(a) of the Federal Rules of Civil Procedure requires a defendant to serve an answer to a complaint within 21 days of being served with the summons and complaint. The Court notes for the record that MetLife served Jayson Jones with summons and the Complaint in Interpleader on July 18, 2015, and Jennifer Jones on July 20, 2015.[12] Neither of the Jones Defendants, who are acting *pro se*, filed an answer within Rule 12(a)'s 21-day time limit. The Court must stress that *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.[13] Excusing *pro se* litigants from compliance with the rules of procedure would result in an advantage to *pro se* litigants and a disadvantage to parties who retain counsel. Indeed, as the Supreme Court has noted, "strict adherence to the procedural requirements . . . is the best guarantee of evenhanded administration of the law."[14]

Nevertheless, the fact remains that MetLife did not seek entry of default under Federal Rule of Procedure 55(a) against the Jones Defendants for their failure to plead or otherwise defend, and the Jones Defendants have now made their appearance in the case. In their recent *pro se* filings with the Court, each of the Jones Defendants has expressed their misunderstanding about their obligation to appear in the suit and stated the reasons on the merits why the Court should deny relief to Mary McGhee. The Court finds cause to construe the *pro se* papers filed by the Jones Defendants as a responsive pleading for purposes of Federal Rule of Civil Procedure 8(b). Each filing satisfies the liberal notice requirements of Rule 8(b), which provides that an

---

[12] *See* MetLife's Proof of Service, July 27, 2015 (ECF Nos. 10, 11).

[13] *McNeil v. United States,* 508 U.S. 106, 133 (1980).

[14] *Id.* (citing *Mohasco Corp. v. Silver,* 447 U.S. 807 (1980)).

answer or responsive pleading "state in short and plain terms its defenses to each claim asserted against it; and admit or deny the allegations asserted against it by an opposing party."[15] Each *pro se* filing bears the signature of Jayson Jones and Jennifer Jones, respectively, and conforms to Rule 11(a) of the Federal Rules of Civil Procedure.[16] And as *pro se* filings, the Court has an obligation to construe the papers liberally. The United States Supreme Court has observed that "in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."[17] Under all of the circumstances, the Court concludes that the Jones Defendants' *pro se* filings satisfy their pleading obligation under Rule 8(b).

Turning then to the merits of McGhee's Motion to Strike, Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[18] The language of Rule 12(f) is permissive and not mandatory. The Sixth Circuit has recently stated that Rule 12(f) motions to strike "are viewed with disfavor and are not frequently granted."[19] A motion to strike serves the purpose "to avoid the expenditure of time and money that must arise from litigating spurious

---

[15] Fed. R. Civ. P. 8(b)(1).

[16] Fed. R. Civ. P. 11(a) (requiring "[e]very pleading, written motion, and other paper [to] be signed . . . by a party personally if the party is unrepresented" and making it mandatory for the court to strike an unsigned paper "unless the omission is promptly correct after being called to the attorney's or party's attention").

[17] *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

[18] Fed. R. Civ. P. 12(f).

[19] *Operating Eng'rs Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted).

issues by dispensing with" them early in the case.[20]  As such, a court should grant a motion to strike "if it appears to a certainty that [the moving party] would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings."[21]

The Court holds that McGhee has not satisfied this elevated standard.  Based on McGhee's own pleadings, it cannot be said that the Jones Defendants have raised a spurious claim to the disputed life insurance proceeds.  McGhee's Answer to the Complaint in Interpleader admitted that the Jones Defendants were previously designated as the beneficiaries of the policy and that MetLife gave McGhee and the Jones Defendants pre-suit notice of their adverse claims to the proceeds and the potential of MetLife's double liability to the parties.[22] Perhaps more importantly, McGhee's Answer admitted that "[i]f a court were to determine that the 2013 Beneficiary Designation [naming McGhee] is invalid, then the Plan Benefits would be payable to [the Jones Defendants] in equal shares, based on the 2006 Beneficiary Designation."[23] In light of these admissions alone, it does not appear to a certainty that McGhee's claim to the life insurance proceeds "would succeed despite any state of the facts which could be proved in support of" the claim asserted by the Jones Defendants.

Finally, McGhee has cited no authority for the proposition that Rule 12(f) motions to strike apply to a responsive pleading filed by *pro se* parties to an interpleader action and at the specific direction of the Court.  The Court ordered the Jones Defendants to respond and appear at

---

[20] *Id.* (citing *Kennedy v. City of Cleveland,* 797 F.2d 297, 305 (6th Cir. 1986)).

[21] *Id.* (citing *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1400 (7th Cir. 1991)).

[22] McGhee's Answer ¶¶ 12, 17 (ECF No. 12).

[23] *Id.* ¶ 22.

a motion hearing and warned them that their failure to respond would result in the entry of judgment in favor of Mary McGhee. The Jones Defendants responded and appeared as ordered and presented evidence at the motion hearing on the merits of each party's claims. Under the circumstances, striking their *pro se* briefs would be unduly harsh and otherwise inconsistent with the Court's previous instructions to the Jones Defendants. Therefore, McGhee's Motion to Strike is **DENIED**.

## II. Motion for Summary Judgment

In her Motion for Summary Judgment, McGhee seeks judgment as a matter of law on her claim that the she is the designated beneficiary for the life insurance proceeds at issue. The United States Court of Appeals for the Sixth Circuit "has held that claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law."[24] Every ERISA plan "must specify the basis on which payments are made to and from the plan."[25] An ERISA plan administrator must "act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA itself.[26] In the context of determining a designated beneficiary, this means plan administrators must "follow plan documents to determine the designated beneficiary" and give effect to a participant's executed designation of

---

[24] *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000).

[25] *Bd. of Trs. of the Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union No. 392 Pension Fund v. B & B Mech. Servs., Inc.*, 813 F.3d 603, 608 (6th Cir. 2015) (quoting 29 U.S.C. § 1102(b)(4)).

[26] *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)).

beneficiary form.[27]   It is undisputed in this case that Bernadine McGhee was a participant in an

ERISA plan providing her with $14,500.00 in life insurance benefits.  Ms. McGhee passed away

on November 29, 2014.  A designation of beneficiary form, dated January 20, 2013, and in effect

at the time of Ms. McGhee's death, named Mary McGhee as the sole beneficiary of the policy

proceeds.  As a plan document, the January 20, 2013 designation of beneficiary form would

normally end the Court's inquiry.

However, the Jones Defendants have come forward to challenge McGhee's right to the

proceeds and raise a number of facts to contest Bernadine McGhee's designation of beneficiary.

The Jones Defendants contend that the beneficiary designation form naming Mary McGhee was

the product of undue influence.[28]   An exception to ERISA's general rule of strict adherence to a

plan document applies in cases involving allegations of forgery, undue influence, or some other

impropriety because "the validity of a plan document itself is in question."[29]   While ERISA

preempts and federal law governs the proper determination of the beneficiary under an ERISA

plan, the Sixth Circuit concluded in *Tinsley v. General Motors Corp.* that ERISA "does not

contain any provisions regulating the problem of beneficiary designations that are forged, the

---

[27] *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996) (citing 29 U.S.C. § 1104(a)(1)(D)).

[28] *See* Jennifer Jones' Resp. 1 (ECF No. 33) ("Moreover, in the same year of 2013 charges were filed against Mary McGhee, my grandmother's policy was also changed to designate her as the single beneficiary. I can only imagine what other important documents that were changed or manipulation [sic] during 2013."); Jayson Jones' Resp. 1 (ECF No. 34) ("My grandmother, Bernadine J. McGhee would have not knowingly changed her beneficiaries to her nephew's wife . . . [i]f anything Mary McGhee tried to pursue undue influence over our grandmother.").

[29] *Tinsley*, 227 F.3d at 704 n.1.

result of undue influence, or otherwise improperly procured[.]"[30]  In these cases, courts in this

Circuit look beyond the plan documents, that is, the beneficiary designation form, and consider

federal common law under ERISA and, in the absence of federal common law, state law.[31]

Under Tennessee law, undue influence involves "exerting enough influence or pressure to

break down a person's will power and to overcome a person's free agency or free will so that the

person is unable to keep from doing what he or she would not otherwise have done."[32]

Tennessee courts do not invoke the doctrine of undue influence lightly and will proceed "with

the utmost care and caution" to invalidate written instruments duly executed by a decedent.[33]

Tennessee courts are charged with a duty of vigilance "to prevent imposition upon those who are

weak, frail, and vulnerable to the influence and importunities of others who exercise a dominant

position over them."[34]

In Tennessee, confidential relationships present specific concerns of undue influence.  "A

confidential relationship is any relationship which gives one person dominion and control over

---

[30] *Id.*

[31] *Id.* at 704 ("[B]ecause there is no established federal common law in this circuit dealing with forgery and undue influence in the designation of beneficiaries, we look to state-law principles for guidance."); *see also United Food and Commercial Workers Union-Employer Pension Fund v. Rubber Assocs., Inc.*, 812 F.3d 521, 527 (6th Cir. 2016) (recognizing *Tinsley* and its holding that federal common law governs claims of undue influence in ERISA beneficiary designations); *B & B Mech. Servs.*, 813 F.3d at 608 (same); *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 511 (6th Cir. 2014) (same).

[32] *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 301 (Tenn. Ct. App. 2001).

[33] *Richmond v. Christian,* 555 S.W.2d 105, 109 (Tenn. 1977).

[34] *Id.*

another."[35]   The doctrine of undue influence applies where a confidential relationship puts "one party, such as a grantee, [] in a position to exercise undue influence over the mind and the will of another, such as a grantor."[36]   A party claiming the existence of a confidential relationship has the burden of proof to establish the relationship.[37]   The Tennessee Supreme Court has held that "where there is a confidential relationship between parties, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises that may only be rebutted by clear and convincing evidence of the fairness of the transaction."[38] Typically, the party deriving a benefit from the confidential relationship discharges his or her burden by showing that the weaker party "received independent advice before engaging in the transaction that benefitted the dominant party."[39]

Applying these principles to the facts of this case, the Court holds that questions of material fact remain about whether Bernadine McGhee's designation of beneficiary form naming Mary McGhee as her beneficiary in 2013 was the product of undue influence.   Jennifer Jones testified at the hearing that her grandmother had lived with Mary McGhee and her husband (Bernadine McGhee's nephew) for approximately a year and a half before moving in with Jones some time in early 2013.   Bernadine McGhee then lived with Jones for most of 2013 and up until

---

[35] *Childress v. Currie,* 74 S.W.3d 324, 328 (Tenn. 2002) (citing *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989)).

[36] *In re Estate of Price,* 273 S.W.3d 113, 125 (Tenn. Ct. App. 2008) (quoting *Brown v. Weik,* 725 S.W.2d 938, 945 (Tenn. Ct. App. 1983)); *see also In re Estate of Farmer*, No. M2013-02506-COA-R3-CV, 2014 WL 5308226, at *8-9 (Tenn. Ct. App. Oct. 15, 2014).

[37] *Childress*, 74 S.W.3d at 328 (citing *Brown*, 725 S.W.2d at 945).

[38] *Id.*

[39] *Id.* (citing *Hogan v. Cooper,* 619 S.W.2d 516, 519 (Tenn. 1981)).

her hospitalization in June 2014 and subsequent rehabilitation in a nursing home. The signed designation of beneficiary form naming Mary McGhee as the beneficiary of Bernadine McGhee's life insurance policy was dated January 20, 2013. A reasonable inference from this evidence is that Bernadine McGhee signed the designation of beneficiary form while she was still residing with Mary McGhee and a short time before she moved in with her granddaughter Jennifer Jones.

Jones also produced at the hearing a copy of a writing entitled "Revocation of Power of Attorney." The document, which the Court admitted for identification purposes only, appears to be a legal form with certain information handwritten on blank lines in black ink. According to Jones, she personally prepared the document with the assistance of an employee at her grandmother's nursing home. The document contains Bernadine J. McGhee's name and address and states as follows:

> I, the undersigned *Bernadine J. McGhee* residing at *955 Germantown Road, Cordova TN 38018* hereby revoke the Power of Attorney dated *8/28/2014 to →* *Mary McGhee* and granted to *Jennifer D. Jones 35 Oliver Lane Moscow, TN (38057)*. I hereby give notice to *Cordova Health Care* (Agent listed in Power of Attorney) and all other interested parties that I withdraw every power and authority thereby given and declare the above Power of Attorney null and void and of no further force or effect.[40]

The document purports to contain the signature of Bernadine J. McGhee and is dated August 28, 2014. The writing also purports to bear the signature of a witness to the execution of the document named Terrance Davis and a notary public. Jones testified that her grandmother's

---

[40] The Court has reproduced the pre-printed language of the legal form in regular typeface and the portions of the form completed with an ink pen in italics. The Court notes that the preprinted word "granted to" has the letters "-ed" struck through and an arrow drawn to the line containing the name Jennifer D. Jones.

intent in signing the document was to revoke a power of attorney previously granted to Mary McGhee and to grant power of attorney to Jones. McGhee objected to the admissibility of the document at the hearing and questioned the relevance and probative value of the exhibit to the issues presented at summary judgment. Counsel for McGhee specifically pointed out that the document appeared to be a legal form and that contrary to Jones' opinion or interpretation of the document, the document as drafted did not actually vest Jones with power of attorney.[41] The Court notes McGhee's objections here for the record but need not make a final ruling about the admissibility or correct construction of the writing to decide McGhee's Motion for Summary Judgment.

Viewing Jones' oral testimony about the document in the light most favorable to the Jones Defendants as the non-moving parties at summary judgment, the Court holds that a reasonable juror could find that prior to August 28, 2014, Bernadine McGhee had granted Mary McGhee power of attorney. By operation of Tennessee law, the power of attorney granted to Mary McGhee created a confidential relationship between Bernadine McGhee and Mary McGhee. The Tennessee Supreme Court has held that "a confidential relationship arises as a matter of law when an unrestricted power of attorney is granted to the dominant party,"[42] though it should be noted that an unexercised power of attorney does not automatically create a

---

[41] Under Tennessee law, a power of attorney is a written instrument whose interpretation is a question of law. *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 749-50 (Tenn. 2007) (citations omitted). Like all contracts and written instruments, courts must interpret a power of attorney "according to [its] plain terms," and when the meaning is clear and unambiguous, the courts must give effect to "the intention of the principal at the time of the execution of the power of attorney." *Id.* at 750.

[42] *Childress*, 74 S.W.3d at 328 (citing *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995)).

confidential relationship.[43]  Perhaps more importantly, Bernadine McGhee's execution of a change of beneficiary naming Mary McGhee as the beneficiary of her insurance policy in January 2013, presumably at a time when Mary McGhee had power of attorney, conferred a personal benefit on Mary McGhee and thereby created a rebuttable presumption of undue influence.

Accepting Jones' version of events as true as the Court must to decide the Motion for Summary Judgment, the Court concludes that questions of fact remain about the 2013 designation of beneficiary form.  At this stage of the dispute, the Jones Defendants have introduced proof tending to show that the 2013 designation of beneficiary form may have been the product of undue influence and Mary McGhee's confidential relationship with Bernadine McGhee as she exercised power of attorney over Bernadine McGhee's affairs.  For her part McGhee has not come forward with any proof, much less clear and convincing proof, to rebut the presumption of undue influence.  Therefore, McGhee's Motion for Summary Judgment must be **DENIED**.

McGhee has not presented any evidence other than a copy of the 2013 designation of beneficiary form naming her as the beneficiary of Bernadine McGhee's life insurance policy. McGhee relied exclusively on the January 2013 designation of beneficiary form to support her request for judgment as a matter of law.  In addition to Jones' testimony about her grandmother's revocation of the power of attorney granted to Mary McGhee, Jones also offered testimony about criminal charges her grandmother filed against Mary McGhee in 2013.  The Complaint in Interpleader alleges that Jones addressed a letter to MetLife on December 3, 2014, and attached a

---

[43] *Id.* at 329.

copy of a police report, showing that "Ms. [Mary] McGhee was suspected of having committed fraud and identity theft" against Bernadine McGhee. MetLike made a copy of the report (ex. F, ECF No. 1-10) an exhibit to the Complaint in Interpleader. Jennifer Jones also produced a copy of the police report at the motion hearing.

On its face, the police report purports to show that Bernadine McGhee filed a complaint on December 12, 2013, against Mary McGhee for cashing a check in the amount of $2,600.00 on her account without her consent. While McGhee objected at the motion hearing to the admissibility of the police report, her Answer to the Complaint in Interpleader admitted "the existence of the Collierville Police Department report."[44] At this stage of the proceedings, McGhee has not explained the circumstances alleged in the report or addressed the disposition (if any) of the charges described in the report. In addition to the triable issues that remain over McGhee's possible undue influence over Bernadine McGhee in the execution of the beneficiary designation in January 2013, serious questions remain about the allegations of the Complaint in Interpleader and the criminal charges against Mary McGhee.

Federal Rule of Civil Procedure 56(f) grants the Court the discretion to enter summary judgment *sua sponte* for a nonmovant or to enter summary judgment on grounds not raised by a party but only after giving the party notice and a reasonable opportunity to respond.[45] The Court hereby gives notice to Mary McGhee that the Court is considering summary judgment in favor of the Jones Defendants on the grounds of (1) undue influence and (2) her otherwise improper procurement of Bernadine McGhee's signature on the beneficiary designation form. McGhee has thirty (30) days from the entry of this order to submit evidence to the Court on these issues

---

[44] Answer ¶ 15.

(or any other grounds, which she believes would preclude judgment as a matter of law in favor of the Jones Defendants) to show why the Court should not rule the 2013 beneficiary designation form to be invalid and enforce the December 27, 2006 beneficiary designation form naming the Jones Defendants as the co-primary beneficiaries in equal shares. Failure to respond within the time allowed will result in the Court granting the Jones Defendants judgment as a matter of law. Once McGhee has responded, the Court will make a determination of the matter and issue any appropriate order(s).

## **CONCLUSION**

McGhee's Motion for Summary Judgment is **DENIED**. McGhee is put on notice that the Court is considering *sua sponte* summary judgment in favor of the Jones Defendants. McGhee has thirty (30) days from the entry of this order in which to submit evidence to the Court and show why the Court should not grant the Jones Defendants judgment as a matter of law.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 10, 2016.

---

[45] Fed. R. Civ. P. 56(f)(1) & (2).